IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



BRUCE DUANE WALTON,

    Petitioner,

v.

                                          Civil Action No. 3:17CV474

MR. TRACY RAY,

    Respondent.

## MEMORANDUM OPINION

Bruce Duane Walton, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 3), challenging his conviction in the Circuit Court of the County of Henrico, Virginia (hereinafter, "Circuit Court"). In his § 2254 Petition, Walton argues entitlement to relief based upon the following claims:[1]

    Claim One:    "Concealment of exculpatory facts in grounds of discovery during trial and newly found evidence while in trial." (*Id.* at 6.)

    Claim Two:    "Bill of Rights violations." (*Id.* at 8.)

    Claim Three:    "Errors in the Supreme Court of Virginia Petition for Appeal." (*Id.* at 9.)

    Claim Four:    "Errors in Statement of Facts prepared and stated in the Supreme Court of Virginia Appeal." (*Id.* at 11.)

Respondent moves to dismiss on the ground that Walton's claims are procedurally defaulted and barred from review here. Walton has filed an "Answer and Objection to Brief" ("Response," ECF No. 16). For the reasons set forth below, the Motion to Dismiss (ECF No. 9) will be GRANTED.

---

[1] The Court corrects the spelling, punctuation, and capitalization in the quotations from Walton's submissions.

## I. PROCEDURAL HISTORY

After a jury trial, Walton was convicted of first-degree murder, one count of felony credit card theft, one count of felony attempted credit card theft, two counts of misdemeanor credit card fraud, and one count of misdemeanor attempted credit card fraud. (ECF No. 10-1, at 1–2.) The jury recommended a sentence of life plus twenty-five years on the felony counts, and an additional thirty-six months on the misdemeanor counts. (*Id.* at 3–4.) On March 5, 2015, the Circuit Court imposed the sentence recommended by the jury. (*Id.* at 7.)

Walton appealed, arguing that the evidence was insufficient to support his conviction of first-degree murder. (ECF No. 10-4, at 1.) The Court of Appeals of Virginia denied the petition for appeal. (*See id.*) The Supreme Court of Virginia refused the petition for appeal. (ECF No. 10-5, at 1.) Walton did not file a petition for writ of habeas corpus in the state courts. Rather, on July 18, 2017, Walton filed his § 2254 Petition in this Court.[2] (§ 2254 Pet. 16.)

## II. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state

---

[2] Walton initially had a friend sign and submit a 28 U.S.C. § 2241 petition in this Court. (ECF No. 1.) By Memorandum Order entered on July 14, 2017, the Court explained to Walton that he must place his claims on a standardized form for filing a § 2254 petition. (ECF No. 2.)

remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and

3

"the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n. 1).[3] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

To exhaust his claims, Walton was required to present properly these claims to the Supreme Court of Virginia. If Walton now attempted to raise his claims in the Supreme Court of Virginia in a habeas petition, that habeas petition would be barred as successive pursuant to section 8.01–654(B)(2) of the Virginia Code,[4] and as untimely pursuant to section 8.01–654(A)(2) of the Virginia Code.[5] Virginia's statute of limitations for habeas actions and the bar

---

[3] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

[4] This statute provides, in relevant part:

Such petition shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition.

Va. Code Ann. § 8.01–654(B)(2) (West 2018).

[5] This statute provides:

A habeas corpus petition attacking a criminal conviction or sentence ... shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition

4

on successive habeas petitions are adequate and independent procedural rules when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006). In his § 2254 Petition, Walton admits that he never raised any of his claims in the state courts. Walton also fails to demonstrate any cause and prejudice for his default or a fundamental miscarriage of justice in his § 2254 Petition.

Respondent acknowledges that under *Martinez v. Ryan*, 566 U.S. 1 (2012), ineffective assistance of counsel "at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9.[6] Here, as just explained, Walton never pursued any collateral proceedings in state court. Thus, *Martinez* is inapplicable here. *See Jones v. Pa. Bd. of Prob. & Parole*, 492 F. App'x 242, 246–47 (3d Cir. 2012) (holding that the "*Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever"); *Pullen v. Dir., Va. Dep't of Corr.*, No. 7:14CV00211, 2015 WL 159533, at *3 (W.D. Va. Jan. 13, 2015), *appeal dismissed*, 604 F. App'x 284 (4th Cir. 2015) (citing *Jones* and explaining that because petitioner "did not initiate a state habeas proceeding, . . . he cannot benefit from the *Martinez* exception to default of his

---

of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01-654(A)(2) (West 2018).

[6] As a preliminary matter, the Court fails to discern how *Martinez* could apply here as Walton raises no clear claim that trial counsel was ineffective. Buried in his attachment called "Bill of Rights" violations, Walton provides a laundry list of vague, unsupported allegations including that counsel was originally unprepared for trial, refused to "seek a sequestered impartial jury," refused "to have compulsory process for obtaining witnesses," and failed to seek a "bail/bond hearing." (ECF No. 3–5, at 3–4.) Nevertheless, Respondent generously construes Walton to bring his first two claims under the guise of ineffective assistance of counsel, and in his Reply, Walton adopts the claims as set forth by Respondent. Because it is of no moment, this Court will assume that Walton intends to bring Claims One and Two as ineffective assistance of counsel claims.

5

claims that trial counsel was ineffective"); *Anderson v. Clarke*, No. 2:13–CV–223, 2014 WL 1203032, at *5 (E.D. Va. Mar. 24, 2014).

In response to argument made by Respondent, for the first time in his Reply, Walton argues that his "actual innocence" excuses his default and his conviction for first-degree murder would amount to a fundamental miscarriage of justice. (ECF No. 16, at 3–5.)[7] Walton's actual innocence argument is comprised mostly of case law supplied by Respondent and recited by Walton and is short on facts to support his argument. As discussed at length below, Walton is neither actually innocent, nor does his conviction result in a fundamental miscarriage of justice.

### III. ACTUAL INNOCENCE

Walton may obtain review of his claims "only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 315–16 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)). "Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted).

Here, the Court reviews Walton's arguments under the more lenient standard for gateway actual innocence claims, because subscribing to Walton's actual innocence claims would permit the Court to consider the merits of his otherwise procedurally defaulted claim. A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "Because such evidence is obviously unavailable in the vast

---

[7] Walton never explicitly specifies whether he intends to argue that he is actually innocent of his first-degree murder conviction or whether he is also actually innocent of the crimes involving the use of the victim's credit card. However, it appears that Walton intends to focus solely on his alleged actual innocence of first-degree murder based on his argument and his reference to his innocence of "this crime." (ECF No. 16, at 3.)

6

majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Moreover, "actual innocence" means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted) (internal quotation marks omitted) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

On appeal, Walton argued that the evidence was insufficient to convict him of first-degree murder. Specifically, he argued that "the evidence was insufficient to prove his identity as the victim's killer, and alternatively that the evidence was insufficient to prove the killing was premeditated when the Commonwealth's evidence showed that appellant was intoxicated to the point of blacking out at the time of killing." (ECF No. 10–4, at 1.) In rejecting his sufficiency arguments for the first-degree murder conviction, the Court of Appeals of Virginia aptly explained:

7

On April 4, 2014, Jason Fuller visited the residence of his uncle, Roy Fuller, and discovered his body. The victim had sustained 123 sharp force injures to the face, neck, torso, and extremities. A detective with the Henrico Police Department executed a search warrant at the home and discovered among other things, a large amount of cash, a check register, and three credit cards. The detective did not find a debit card belonging to the victim or his driver's license.

Evidence adduced at trial showed that appellant used the victim's debit card four times to make or attempt purchases throughout the day on April 11. Appellant did not dispute that he had used the victim's debit card, but presented evidence and argued that the victim had given it to him.

A medical examiner performed an autopsy on the victim and came to the conclusion that the victim had probably died between half a day and two days before April 4, but that it would have been as much as six days before if conditions were right in the victim's home. The victim's neighbor and friend testified he normally saw the victim almost every day, but that he had not seen the victim since March 29. He also testified that he had not been able to get an answer at the victim's door, and noticed the victim's mail had begun to stack up after March 29.

Jeffrey Edwards, who was in jail with appellant, testified appellant told him he went to the victim's house on March 29, 2014 to borrow money, but the victim refused to give him any money. Edwards stated appellant said he "lost control" because he had consumed so much alcohol and then appellant "blacked out." Edwards testified appellant said that when he awoke, he possessed the victim's wallet, the victim's credit card, and some cash. He stated appellant panicked and left the residence. Edwards also stated appellant waited several months to use the credit card, although the evidence showed appellant used the card on April 11, 2014. Edwards also knew certain details about the victim's residence and the crime scene, such as the presence of cash and marijuana in the house. Edwards had felony convictions and convictions involving moral turpitude. Charles Scott testified that he partied with Walton, who uses crack cocaine. Walton took out a title loan on his vehicle on April 12, 2014, to get more money for alcohol and drugs.

The defense attacked Edwards's credibility through the testimony of several other inmates who stated appellant did not confess to them that he committed any of the offenses, although they discussed the case with appellant. In addition, one of the inmates testified he asked Edwards if he was a "snitch," and Edwards replied, "No," but "if it's a get-out-of-jail-free card, then he'd take it." In addition, Edwards was released on bond after reporting his conversation with appellant.

David Kuehl, an nTelos employee, analyzed appellant's cell phone records and cell tower locations to determine appellant's location at relevant time periods. Kuehl testified it was "very probable" that appellant's cell phone was turned off from 9:19 p.m. on March 29, 2014 until 12:12 a.m. on March 30, 2014. Kuehl stated that when the phone was turned off, it was within the cell tower range that serviced an area including the victim's address. Kuehl testified that when the phone turned on again, it was "just north of that location."

8

Several defense witnesses testified that on March 29, 2014, appellant assisted in the installation of a sink at his sister's house and that appellant left his sister's house between approximately 11:30 p.m. and midnight. Defense witnesses stated appellant possessed the victim's credit card on that night. Some of these witnesses also testified appellant possessed the victim's credit card in the past. Ultimately, appellant was convicted in a jury trial of first-degree murder, credit card theft, two counts of credit card fraud, and two counts of attempted credit card fraud. Appellant noted his appeal.

Appellant argues the cell phone evidence failed to place him at the victim's home on March 29, 2014 and the technology used to extrapolate that information is not an exact science. He also asserts his use of the victim's credit card was only a suspicious circumstance. Appellant contends Edwards' testimony was thoroughly impeached, contained inaccuracies, and Edwards had a motive to fabricate the testimony.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Sandoval v. Commonwealth*, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The conclusions drawn by the fact finder on credibility issues may be disturbed on appeal only if the appellate court finds that the witness' testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Fisher v. Commonwealth*, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)).

"While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to [the] conclusion'" that the defendant is guilty. *Stamper v. Commonwealth*, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting *Karnes v. Commonwealth*, 125 Va. 758, 764, 99 S.E. 526, 564 (1919)).

The jury rejected appellant's alibi evidence in favor of the circumstantial evidence that demonstrated his guilt. Although parts of Edwards' testimony were impeached, portions of his testimony were corroborated by other evidence presented in the case. Furthermore, the jury was free to believe and disbelieve in part or in whole the testimony of any witness. *Rollston v. Commonwealth*, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

Edwards testified appellant wanted to borrow money from the victim, the victim refused to give him money, and appellant "lost control." Less than two weeks later, appellant used the victim's debit card to make purchases. Cell phone evidence placed appellant's cell phone in the vicinity of the crime scene on the night of the last date the victim was seen alive. The evidence presented was not "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *See Fisher*, 228 Va. at 299-300, 321 S.E.2d at 204.

"[W]e are not permitted to reweigh the evidence," *Nusbaum v. Berlin*, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no

authority "to preside de novo over a second trial," *Haskins*, 44 Va. App. at 11, 602 S.E.2d at 407. Instead, we give "juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them." *Bradley v. Commonwealth*, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955). From the evidence presented, the jury could have concluded appellant killed the victim.

Appellant argues, alternatively, that because Edwards testified appellant said he had "blacked out" from consuming so much alcohol, appellant could not have formed the intent to commit first-degree murder.

"Premeditation and formation of an intent to kill seldom can be proved by direct evidence. A combination of circumstantial factors may be sufficient." *Rhodes v. Commonwealth*, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989). Factors that may be considered include "the nature and extent of the injuries inflicted upon the deceased . . . ." *Id.* at 486, 384 S.E.2d at 98–99.

"[M]ere intoxication from drugs or alcohol will not suffice to negate premeditation." *Jenkins v. Commonwealth*, 244 Va. 445, 458, 423 S.E.2d 360, 368 (1992). "[S]o long as [a defendant] retains the faculty of willing, deliberating and premeditating, though drunk, he is capable of committing murder in the first degree; and if a drunk man is guilty of wilful, deliberate and premeditated killing, he is guilty of murder in the first degree." *Duncan v. Commonwealth*, 2 Va. App. 717, 731, 347 S.E.2d 539, 547 (1986).

Although Edwards testified appellant said he was drunk on the night of the incident, the jury was not required to believe either that appellant was drunk or that he was so intoxicated that he was unable to form the requisite intent to commit first-degree murder. *See Rollston*, 11 Va. App. at 547, 399 S.E.2d at 830. Furthermore, the evidence showed the victim was stabbed over one hundred times with a sharp object. One of the wounds entered the victim's heart, but the medical examiner stated several of the stabs could have been fatal. The victim then bled to death in his home. In denying appellant's motion to strike the first-degree murder charge on the basis of appellant's intoxication, the circuit court stated, "from the nature of the injuries and how long it would take to stab somebody that many times, there is sufficient evidence for the first degree in order for the charge to go to the jury." We do not disagree. From the evidence of the nature and extent of the injuries inflicted upon the victim, the jury could infer appellant acted with premeditation and malice aforethought. Accordingly, the evidence was sufficient to support appellant's conviction, and the trial court did not err by denying appellant's motions to strike.

(ECF No. 10–4, at 2–6.)

Walton asserts that he is actually innocent because "no evidence presented or theory proffered by Commonwealth singularly or combined concluded that Walton committed this crime." (ECF No. 16, at 3.) Rather than direct the Court to new reliable evidence of his

innocence as he must, he simply continues to argue that insufficient evidence existed to convict him. In support of his claim Walton contends:

> In fact, every piece of evidence offered by Commonwealth further showed the defendant was not the perpetrator. While it is not the burden or responsibility of Walton to prove who committed the crime, Petitioner has risen to the bar of exoneration, by fact, and no physical evidence, including DNA, blood, saliva, footprints, hairs, witnesses, testimony, or any other source has put Walton as the perpetrator, including phone pings. Edwards's testimony was completely impeached, and therefore offered no value. Therefore, Walton has proven his actual innocence, and should never have been held for seven months [prior] to trial with no bond hearing, as to inflame the local community by being the most pictured person (with articles inside) on the cover of the "Gotcha" magazine.

(*Id.*) Walton next argues that some unidentified clothing should have been tested, and the fact that it has not been "will result in further fundamental miscarriage of justice." (*Id.* at 3–4.)[8] Here, Walton directs the Court to no new reliable evidence of his innocence. Therefore, he fails to establish that his alleged actual innocence permits the Court to reach the merits of his defaulted claims for relief and his § 2254 Petition.

Moreover, as aptly set forth by the Court of Appeals of Virginia, ample evidence existed of Walton's guilt. Walton's arguments to the contrary, simply lack merit.

---

[8] Walton also includes a final section which makes absolutely no sense and is certainly not new reliable evidence of his innocence. He states: "Petitioner proffered reliable evidence supporting his claim of innocence, including but not limited to facts concealed by 'Grounds of Discovery.' Ineffective counsel that placed 6X10 Billboards seeking Office of New Commonwealth Attorney at the intersection of Staples Mill Rd and Hermitage Rd. (Petitioner's address 9001 Staples Mill Rd and victim's address 5812 Hermitage Rd. This 6X10 billboard has been filed with Petitioner's paperwork) further creating prejudice and tainting jurors by which the plaintiff could not overcome, whereby creating a 'fundamental miscarriage of justice.'" (ECF No. 16, 4–5.)

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 9) will be GRANTED. Walton's claims will be DISMISSED, and his § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[9]

An appropriate Final Order shall issue.

Date: 6/11/18
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Walton fails to meet this standard.